**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|                                                      |     |                            |
| ---------------------------------------------------- | --- | -------------------------- |
| TRAXXAS LP,                                          | §   |                            |
|                                                      | §   |                            |
|    *Plaintiff,*                       | §   |                            |
|                                                      | §   |                            |
| v.                                                   | §   | Case No. 2:14-CV-1005-RSP  |
|                                                      | §   |                            |
| HOBBYKING CORP. d/b/a                                | §   |                            |
| HOBBYKING and HOBBYKING.COM,                         | §   |                            |
| *et al.*,                                            | §   |                            |
|                                                      | §   |                            |
|    *Defendants.*                      | §   |                            |
|                                                      | §   |                            |

## <u>MEMORANDUM OPINION AND ORDER</u>

On August 4, 2015, the Court held a hearing to determine the proper construction of the disputed claim terms in n United States Patent Nos. 7,374,460 ("the '460 Patent"), 7,530,855 ("the '855 Patent"), and 7,867,038 ("the '038 Patent") (collectively, the "Asserted Patents"). After considering the arguments made by the parties at the hearing and in the parties' claim construction briefing (Dkt. Nos. 46, 47, and 49), the Court issues this Claim Construction Memorandum and Order.

## TABLE OF CONTENTS

I.     BACKGROUND ........................................................................................................... 3

II.    APPLICABLE LAW ................................................................................................... 4

I.     CONSTRUCTION OF AGREED TERMS ................................................................. 7

II.    CONSTRUCTION OF DISPUTED TERMS ............................................................ 10

    1.    "electrical connector," "electrical connector assembly," and "the connector" ...... 11

    2.    "female connector receptacle," "female connector," and "male connector
          electrode" ........................................................................................................... 21

III.   CONCLUSION ......................................................................................................... 27

## I.    BACKGROUND

The '038 Patent is a continuation of the '855 Patent, which is a continuation of the '460 Patent.[1] '038 Patent at 1:6–11. The Asserted Patents share a nearly identical specification, and generally relate to electrical connectors. *See, e.g.,* '460 Patent at Abstract.[2] Specifically, the Asserted Patents disclose high-current electrical connectors with protection against reverse polarity connections. '460 Patent at 1:7–9. Figures 1 and 2 of the '460 Patent illustrate an exemplary embodiment.



*FIG. 1*



*FIG. 2*

'460 Patent at Figures 1 and 2. The specification of the '460 Patent states that "reference

---

[1] The '460 Patent was filed April 17, 2007, and issued on May 20, 2008. The '855 Patent was filed on December 6, 2007 and issued on May 12, 2009. The '038 Patent was filed on April 3, 2009 and issued on January 11, 2011.

[2] The Abstract of the '460 Patent follows:
> An electrical connector is provided comprising a female member and a male member configured such that the female member is inhibited from being electrically coupled to the male member if the electrical coupling would reverse the polarity of the electrical connector. The female member may comprise a first and second chamber. The male member may comprise a first and second extension. The first and second chambers may be configured to insertably accommodate the first and second extensions. The female member may comprise one or more resilient members providing a pressing force to bias at least a portion of a male electrode against at least a portion of a corresponding female electrode. Alternatively, the cover of the male electrode in the first and second extensions may comprise a resilient member.

numeral 1000 generally indicates an illustrative embodiment of an electrical connector 1000 at least partially configured according to the present invention." *Id.* at 2:47–50. The specification adds that "electrical connector 1000 may comprise a female member 100 and a male member 500." *Id.* at 2:50–51. The specification further states that "[t]he female member 100 may comprise a female housing 102, a first and second female terminal 200, and a first and second resilient member 300." *Id.* at 2:63–65. The specification also states that "[t]he male member 500 may comprise a male housing 502 and a first and second male terminal 600." *Id.* at 2:65–67.

Plaintiff brings suit alleging infringement of claims 1–11 of the '040 Patent, claims 1–4 and 6–12 of the '855 Patent, and claims 1–17 and 19 of the '038 Patent. Claim 1 of the '038 Patent is an exemplary claim and recites the following elements (disputed term in italics):

> 1. An *electrical connector assembly* having a first connector, the first connector comprising:
> an electrically insulating housing;
> an electrically conductive first terminal retained by the housing, wherein the first terminal extends from the housing and comprises a contact surface extending along a coupling length of the first terminal outside of the housing for electrically coupling with a second terminal disposed within a *female connector receptacle*;
> an insulating cover disposed along at least a portion of the coupling length of the first terminal for electrically insulating one or more surfaces of the first terminal other than the contact surface; and
> wherein at least a portion of the coupling length of the first terminal, the insulating cover and the contact surface are configured for insertion through an opening of a *female connector receptacle*.

## II.    APPLICABLE LAW

### A.  Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303,

1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *See id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id*. Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own

terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id*. The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court. *Id*. Generally, extrinsic

evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## I.    CONSTRUCTION OF AGREED TERMS

The parties agreed to the construction of the following term:

| Claim Term/Phrase | Agreed Construction |
|---|---|
| "operatively coupled"<br><br>('855 Patent, claim 12) | "electrically coupled" |

Dkt. No. 52–1 at 1 (Joint Claim Construction and Prehearing Statement). In view of the parties' agreement on the proper construction of the identified term, the Court hereby adopts the parties' agreed construction.

During the claim construction hearing, the Court provided the parties with preliminary constructions for the disputed terms/phrases. The parties agreed to the Court's preliminary construction for the following terms:

| Claim Term/Phrase | Agreed Construction |
|---|---|
| "first connector"<br><br>('855 Patent, claim 11)<br>('038 Patent, claims 1, 3, 4, 10, 19) | Plain and ordinary meaning. |
| "housing"<br><br>('460 Patent, claims 1, 3, 4)<br>('855 Patent, claims1, 3, 8, 12)<br>('038 Patent, claims 1, 3, 4, 11, 13, 14, 15, 17, 19) | Plain and ordinary meaning. |
| "body portion"<br><br>('855 Patent, claim 11) | Plain and ordinary meaning. |

Regarding the term "first connector," the Court finds that the term appears in asserted claim 11 of the '855 Patent; and asserted claims 1, 3, 4, 10, and 19 of the '038 Patent. The Court further finds that the term is used consistently in the claims and is intended to have the same

general meaning in each claim. The Court also finds that the term is unambiguous, is easily understandable by a jury, and should be given its plain and ordinary meaning. Specifically, the body of the claims define what the term "first connector" means. For example, claim 11 of the '855 Patent recites the "first connector" includes an "an electrically insulating body portion," "an electrically conductive first terminal retained by the body portion, wherein the first terminal extends from the body portion and comprises a coupling surface . . . ;" and "an insulating cover disposed along at least a portion of the coupling length of the first terminal." Thus, the claim language recites the structure for the claimed "first connector."

Turning to the proposed constructions submitted in the briefing, Defendant argued that the Court should construe the term "first connector" to mean "male member" to avoid confusion with the "electrical connector" terms. (Dkt. No. 47 at 19.) As will be discussed in detail below, the Court finds that the preamble is not limiting and that the "electrical connector" terms do not require construction. Moreover, the claim language does not require that the "first connector" be a "male member." The word "male" appears nowhere in these claims. By contrast, other asserted claims explicitly recite "male" components. For example, claim 1 of the '855 Patent recites a "male connector electrode," claims 11–17 of the '038 Patent recite "male terminals," claim 18 of the '038 Patent recites a "male electrical connector," and claim 20 of the '038 Patent and its dependents recite a "male connector terminal." Thus, the Court finds that the patentees knew how to claim "male" components when that was their intention. Accordingly, the term **"first connector"** will be given its plain and ordinary meaning.

Regarding the term "housing," the Court finds that the term appears in asserted claims 1, 3, and 4 of the '460 Patent; asserted claims 1, 3, 8 and 12 of the '855 Patent; and asserted claims 1, 3, 4, 11, 13–15, 17, and 19 of the '038 Patent. The Court finds that the term is used

consistently in the claims and is intended to have the same general meaning in each claim. The term "body portion" appears in asserted claim 11 of the '855 Patent. In its briefing, Defendant argued that the terms require construction because Figure 6B illustrates the housing or body portion 502 encompassing the entire length of the male member 500, including the terminal cover. (Dkt. No. 47 at 20.) According to Defendant, this is inconsistent with the specification that describes the "housing 502" as being "substantially rectangular," as well as several independent claims that require the first terminal and the insulated cover "extend from the housing" or are at least partially "outside the housing." (*Id.* at 20.)

The Court is not persuaded by Defendant's analysis. In describing Figure 6B, the specification states that "the male housing 502 may be substantially rectangular in shape and comprise a male conductor housing 504, a male internal wall 505, and a male terminal tip 506 for each of the first and second male terminal extensions 510 and 520." '038 Patent at 7:46–50. As indicated, the specification states that the "male housing 502" comprises a "male conductor housing 504," which does not encompass the entire length. Thus, Defendant incorrectly contends that the specification illustrates only one "housing" as encompassing the entire length. Moreover, Defendant does not explain how giving "housing" and "body portion" their plain and ordinary meanings excludes any preferred embodiments. Accordingly, the Court finds that the plain and ordinary meanings of "housing" and "body portion" encompass both the embodiment shown in Figure 6B and a substantially rectangular component from which a terminal or insulated cover extends.

Moreover, Defendant's construction would be inconsistent with claim 12 of the '855 Patent. Specifically, claim 12 of the '855 Patent recites an electrical connector comprising:

> a *housing* forming at least a portion of a first chamber;
> a first terminal at least partially disposed within at least a portion of

the first chamber;

a resilient member *mounted to the housing*, wherein the resilient member is not operatively coupled to the first terminal and at least a portion of the resilient member comprises an anchor;

wherein the resilient member directly contacts and applies a bias directly to a second terminal at least partially inserted within the first chamber, facilitating contact between the corresponding first terminal and the second terminal; and

wherein *at least a portion of the housing surrounds at least a portion of the anchor of the resilient member to secure the anchor portion to the housing and to insulate at least a portion of the anchor from the first terminal.*

'855 Patent at 18:16–32 (emphasis added). Thus, claim 12 of the '855 Patent requires only that the housing: (1) form at least a portion of a chamber, wherein a terminal is at least partially disposed within at least a portion of the chamber; (2) have a resilient member mounted to it, wherein at least a portion of the resilient member comprises an anchor; and (3) surround at least a portion of the anchor to secure the anchor portion of the resilient member to the housing and to insulate at least a portion of the anchor from the first terminal. In other words, the claim does not require that the first terminal extend from the housing or be at least partially outside the housing, and it also does not require an insulated cover. Furthermore, claim 12 of the '855 Patent does not require the housing to be in contact with or completely surround at least a portion of a terminal. Accordingly, the terms **"housing"** and **"body portion"** will be given their plain and ordinary meaning.

## II.     CONSTRUCTION OF DISPUTED TERMS

The parties' dispute focuses on the meaning and scope of seven terms in the Asserted Patents.

### 1. "electrical connector," "electrical connector assembly," and "the connector"

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "electrical connector" | No construction necessary, as the preamble is not a limitation on the claim. | "a female member and a male member" |
| "electrical connector assembly" | No construction necessary, as the preamble is not a limitation on the claim. | "a female member and a male member" |
| "the connector" | No construction necessary, as the preamble is not a limitation on the claim. | "a female member and a male member" |

#### a) The Parties' Positions

The parties dispute whether the terms "electrical connector," "electrical connector assembly," and "the connector," as used in the preambles of various claims, require construction. Plaintiff contends that the terms do not require construction because the preambles do not limit the claims. (Dkt. No. 46 at 4–5.) Plaintiff argues that the terms "electrical connector," "electrical connector assembly," and "the connector" appear only in the preambles of the claims in question and not in the body of the claims. (*Id.* at 5.) Plaintiff further contends that each claim body describes a structurally complete invention that is unaffected by removing the respective preamble phrase. (*Id.*) Plaintiff asks the Court to find that the preambles are not limiting and hold that construction of "electrical connector," "electrical connector assembly," and "the connector" is unnecessary. (*Id.* at 6.)

Defendant responds that the specification consistently uses the term "electrical connector" to mean "a female member and a male member." (Dkt. No. 47 at 9) (citing '460 Patent at Abstract, and 2:50–51). Defendant argues that every instance of the term "electrical connector" in the Asserted Patents refers to a female member and a male member. (Dkt. No. 47 at 9.) Defendant also argues that the figures of the Asserted Patents also illustrate that the

patentees used the term "electrical connector" to mean "a female member and a male member." (*Id.*) (citing '460 Patent at 1:43–49, Figures 2, 8A, 10, 11 and 12). Defendant contends that the patentees' consistent use of the term "electrical connector" throughout the Asserted Patents is strong evidence that this term means "a female member and a male member." (Dkt. No. 47 at 9.)

Defendant further argues that the patentee limited the invention by stating that "[t]he present invention generally relates to electrical connectors, and, more particularly, to high current electrical connectors with protection against reverse polarity connections." (*Id.* at 10) (citing '460 Patent at 1:6–7). Defendant argues that Plaintiff should not be allowed to enlarge the scope of the claims beyond what he described as the "present invention." (Dkt. No. 47 at 10.) Defendant further contends that it is the combination of features of the female member and the male member that provide "protection against reverse polarity connections." (*Id.*) (citing '460 Patent at 11:3–51, Figures 9A and 9B). Defendant also argues that Plaintiff's infringement contentions support construction of the "electrical connector" terms to mean "a female member and a male member." Specifically, Defendant argues that Plaintiff includes an image of both a female member and a male member in its infringement charts for the "electrical connector" terms in each independent claim. (Dkt. No. 47 at 11.)

Defendant further contends that the "electrical connector" terms are claim limitations because they are necessary to give life, meaning, and vitality to the claims. (*Id.*) (citing *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999)). According to Defendant, the "electrical connector" terms are necessary for the understanding of other claim terms in the body of the asserted claims. (Dkt. No. 47 at 12.) Defendant contends that the terms "contact surface," "coupling length," "electrically coupling," "insulating cover," and "configured for insertion," recited in claim 1 of the '038 Patent, only have meaning if the claim includes

another member. (*Id.* at 12–13.) Defendant argues that a "contact surface" that does not contact anything is only a "surface," and a "coupling length" that does not couple to anything is only a "length." (*Id.* at 13.) Defendant also argues that an "insulating cover" must insulate from something, and the insulating cover can only be "configured for insertion" if there is an opening available for insertion. (*Id.*)

Defendant further argues that the terms "first contact surface," "first coupling length" and "to retain the at least two male terminals within a female connector," recited in claim 15 of the '038 Patent, only make sense in view of the claim term "electrical connector" that includes two members. (*Id.*) Defendant also argues that the "electrical connector" terms, which include both a female member and a male member, provide necessary structure and context to other claim terms that would otherwise be rendered superfluous. (*Id.* at 14.)

Defendant further argues that the female and male members of the "electrical connector" terms provide necessary structure to the asserted claims. (*Id.*) Defendant contends that claim 11 of the '855 Patent requires "a second terminal" that is disposed within "a female connector receptacle," and an "opening of a female connector receptacle." (*Id.*) Defendant argues that these features are not included in the "first connector" (i.e., the male member) and are only found in female member of the "electrical connector assembly" recited in the preamble. (*Id.*) According to Defendant, this indicates that the preamble recites structural limitations of the claimed invention. (*Id.* at 14–15.)

Defendant further repeats the argument that the entirety of the Asserted Patents relates to an electrical connector that includes two members. (*Id.* at 15.) Defendant argues that the Detailed Description discusses the female and male members of the electrical connector as a whole; then describes the details of each member; and culminates by discussing how the female member and

the male member protect against reverse polarity when coupled. (*Id.*) Defendant contends that each additional embodiment described thereafter in the specification requires both a female member and a male member. (*Id.*)

Defendant further contends that Plaintiff incorrectly argues that the "electrical connector" terms are "merely descriptive" or "merely give a descriptive name to the limitations in the body of the claim." (*Id.* at 16.) According to Defendant, the "electrical connector" terms clearly recite structure that is fundamental to the claimed invention, and do not simply provide an intended field of use. (*Id.*) Defendant further argues that a preamble term can be a claim limitation even when it does not otherwise appear in the body of the claims. (*Id.*) Defendant contends that many of the claim terms of the Asserted Patents are indicative of an electrical connector that includes a female member and a male member. (*Id.* at 17.) Defendant argues that the claims make reference to both a female member and a male member with term such as "female connector receptacle," "male connector electrode," "female receptacle," "female electrode," "contact surface," "coupling length," "electrically coupled," "insulating cover," "first component," and "second component." (*Id.*) (citing '460 Patent at claim 1; '855 Patent at claims 1, 11, 12; and '038 Patent at claims 1, 11, 13, 14, 15, 19). According to Defendant, these claim terms are clearly "indicative of" an electrical connector that includes both a female member and a male member. (Dkt. No. 47 at 17.)

Plaintiff replies that Defendant's construction embodies the "cardinal sin" of claim construction by reading into the claims a limitation that appears only in examples in the specification. (Dkt. No. 49 at 2) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005)). Plaintiff argues that neither the claims themselves, the specification, nor the prosecution history "clearly indicate[] that the invention encompasses no more than that confined structure or

method." (Dkt. No. 49 at 3) (citing *Abbott Laboratories v. Sandoz, Inc.,* 566 F.3d 1282, 1288 (Fed. Cir. 2009)). Plaintiff further argues that Defendant does not claim that the patentees acted as their own lexicographer, such that the specification would be dispositive over any ordinary meaning. (Dkt. No. 49 at 3.) According to Plaintiff, Defendant attempts to import limitations from passages of the specification that, on plain reading, are merely illustrative. (*Id.*) Plaintiff further argues that the specification's "consistent" use of "electrical connector" does not mandate that the terms require both a female member and a male member. (*Id.* at 4.)

Plaintiff also argues that Defendant incorrectly contends that the patentees are attempting to enlarge the scope of the claims beyond what they described as the "present invention." (*Id.*) Plaintiff contends that the Asserted Patents are permeated with language specifying that the illustrated and described embodiments are merely non-limiting embodiments. (*Id.* at 5.) Plaintiff argues that the specification's only bare reference to "the present invention" is in the Field of Invention. (*Id.*) Plaintiff contends that neither this statement nor anything else in the record unequivocally requires the "electrical connector" components to have both a female member and a male member. (*Id.*) Plaintiff further replies that its infringement contentions are illustrations of the types of accused products—which include male-only, female-only, and male-and-female connectors. (*Id.* at 6.)

Plaintiff further contends that the "electrical connector" terms do not require both a female member and a male member. (*Id.* at 7.) Plaintiff argues that the "electrical connector" terms as used in the preambles can refer to a female connector, a male connector, or both, and the body of each claim defines exactly what the "electrical connector" is for that claim. (*Id.*) Plaintiff further contends that the Asserted Patents include copious language clarifying that the illustrated and described embodiments are merely non-limiting embodiments. (*Id.*) Plaintiff

argues that neither the applicants nor the examiner made any argument based on the preamble during prosecution. (*Id.* at 8.)

For the following reasons, the Court finds that the preambles are not limiting and that the terms **"electrical connector," "electrical connector assembly**," and "**the connector**" do not require construction.

### b) Analysis

The term "electrical connector" appears only in the preamble of asserted claim 1 of the '460 Patent; asserted claims 1–4 and 12 of the '855 Patent; and asserted claims 11–17 of the '038 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same general meaning in each claim. The term "electrical connector assembly" appears only in the preamble of asserted claims 2–11 of the '460 Patent; asserted claims 6 and 11 and of the '855 Patent; and asserted claims 1–10 and 19 of the '038 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same general meaning in each claim. The term "the connector" appears only in the preamble of asserted claims 7–10 of the '855 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same general meaning in each claim.

A preamble limits an invention "if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002), *quoting Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999). However, a preamble is not limiting "where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Catalina Mktg.*, 289 F.3d at 808, *quoting Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997). The Court finds that the

preambles in the asserted claims are not limiting.

The terms "electrical connector," "electrical connector assembly," and "the connector" appear only in the preambles of the claims in question and do not appear in the bodies of the asserted claims. Furthermore, there are no terms that rely on the preamble for antecedent basis. *Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1376 (Fed. Cir. 2005) (finding that the preamble provided the only antecedent basis and thus the context essential to understand the meaning of the disputed term). Moreover, each of the asserted claims defines a structurally complete invention in the body of the claim. For example, claim 11 of the '855 Patent recites a "an electrically insulating body portion," "an electrically conductive first terminal" that includes "a coupling surface extending along a coupling length of the terminal," and "an insulating cover disposed along at least a portion of the coupling length of the first terminal." Claim 11 further recites the relationship between these elements and indicates that "the coupling surface" is "for electrically coupling with a second terminal disposed within a female connector receptacle." Claim 11 also recites that "the insulating cover and the coupling surface are configured for insertion through the opening of a female connector receptacle." Thus, the claim defines a structurally complete invention in the body of the claims. Indeed, when asked at the claim construction hearing what was lacking from the body of claim 1 of the '460 Patent, Defendant's counsel conceded that the claim body defined a structurally complete invention.

Defendant argues that the claim includes feature that are not included in the "first connector," such as "a second terminal" that is disposed within "a female connector receptacle," and an "opening of a female connector receptacle." (Dkt. No. 47 at 14.) The Court finds that Defendant misreads the plain language of claim 11. The elements that Defendant points to are not part of the recited structure of the claimed "first connector." Instead, these elements describe

the recited structure by its intended use. For example, claim 11 recites that "the insulating cover and the coupling surface *are configured for* insertion through the opening of a female connector receptacle." '855 Patent at Claim 11 (emphasis added). In other words, the recited "first connector" does not require "a second terminal" or "a female connector receptacle." Indeed, Defendant does not provide any indication that requiring a "female connector" was a condition for patentability. *See, e.g., Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1329 (Fed. Cir. 2005) ("[W]hen the 'whereby' clause states a condition that is material to patentability, it cannot be ignored in order to change the substance of the invention."). Here, there is nothing in the intrinsic evidence that unequivocally requires the "electrical connector" components to have both a female member and a male member.

Defendant also argues that the preambles are necessary for the understanding of other claim terms in the body of the asserted claims. (Dkt. No. 47 at 12.) Defendant argues that the terms "contact surface," "coupling length," "electrically coupling," "insulating cover," and "configured for insertion," recited in claim 1 of the '038 Patent, only have meaning if the claim includes another member. The Court disagrees. As with claim 11 of the '855 Patent, the Court finds that claim 1 of the '038 Patent defines a structurally complete invention in the body of the claim. Claim 1 recites "an electrically insulating housing," "an electrically conductive first terminal" that includes "a contact surface extending along a coupling length of the first terminal," and "an insulating cover disposed along at least a portion of the coupling length of the first terminal." Claim 1 also recites the relationship between these elements and further recites that the "contact surface" is "for electrically coupling with a second terminal disposed within a female connector receptacle." Claim 1 also recites that "the insulating cover and the contact surface are configured for insertion through an opening of a female connector receptacle."

Thus, claim 1 of the '038 Patent defines a structurally complete invention in the body of the claims. Moreover, when read in the context of the claim, the terms "contact surface," "coupling length," "electrically coupling," "insulating cover," and "configured for insertion" have meaning without including another member. Again, there is nothing in the intrinsic evidence record that unequivocally requires the "electrical connector" components to have both a female member and a male member. Neither the patentees nor the examiner made any argument based on the preamble.

Given that the preamble is not limiting, and that the disputed terms do not appear in the body of the claims, the Court finds that the terms do not require construction. The Court notes that the intrinsic evidence indicates that an "electrical connector" may include a male connector, a female connector, or both a male and a female connector. To be sure, the Court finds that it is the body of each claim that defines exactly what the "electrical connector" is for that claim. Accordingly, the Court finds that the terms "electrical connector," "electrical connector assembly," and "the connector" do not require construction.

The Court also rejects Defendant's contention that the claims should be limited to the preferred embodiments. Defendant argues that every instance of the term "electrical connector" in the Asserted Patents refers to a female member and a male member. (Dkt. No. 47 at 9.) The Court agrees that the preferred embodiments disclose an "electrical connector" with a female member and a male member. However, the specification makes clear that the "the embodiments disclosed are illustrative rather than limiting in nature" and that a "wide range of variations, modifications, changes, and substitutions are contemplated in the foregoing disclosure." *See, e.g.,* '038 Patent at 16:29–33. Accordingly, the Court finds that the specification's description of the preferred embodiments does not require the claims to include both a female member and a

male member. *See, e.g., Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1352 (Fed. Cir. 2010) ("[W]hen the specification uses a single embodiment to enable the claims, courts should not limit the broader claim language to that embodiment unless the patentee has demonstrated a clear intention to limit the claim scope."); *Linear Tech. Corp. v. ITC*, 566 F.3d 1049, 1058 (Fed. Cir. 2009) ("We have repeatedly held that, even in situations when only one embodiment is disclosed, the claims generally should not be narrowed to cover only the disclosed embodiments or examples in the specification.").

Indeed, this not a case where the patentees repeatedly referred to the combination of the female and male member as "the present invention," or as a "required," "essential," or "critical" element. *See, e.g., Honeywell Int'l, Inc. v. ITT Indus.*, 452 F.3d 1312, 1318–19 (Fed. Cir. 2006) (affirming ruling that a "fuel injection system component" was limited to a "fuel filter" where the written description of the invention referred to the fuel filter as "this invention" or "the present invention" at least four times and there was nothing in the specification to indicate that the fuel filter was merely a preferred embodiment of the invention); *Andersen Corp. v. Fiber Composites*, LLC, 474 F.3d 1361, 1367–68 (Fed. Cir. 2007) (finding specification's description of a "required," "essential," and "critical" element was limiting)). Instead, the specification's only reference to "the present invention" is in the Field of Invention, which states that "[t]he present invention generally relates to electrical connectors and, more particularly, to high current electrical connectors with protection against reverse polarity connections." *See, e.g.*, '038 Patent at 1:15–19. Neither this statement, nor anything else in the record requires the "electrical connector" to have both a female member and a male member.

### c) Court's Construction

In light of the evidence submitted by the parties, the Court finds that the preambles are

not limiting and that the terms **"electrical connector," "electrical connector assembly**," and "**the connector**" do not require construction.

### 2. "female connector receptacle," "female connector," and "male connector electrode"

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "female connector receptacle" | plain and ordinary meaning | "female terminal chamber" |
| "female connector" ('855 Patent claim 8) | plain and ordinary meaning | "female terminal" |
| "female connector" ('855 Patent claim 7, 15) | plain and ordinary meaning | "female terminal chamber" |
| "male connector electrode" | plain and ordinary meaning | "male terminal" |

#### a) The Parties' Positions

The parties dispute whether the terms "female connector receptacle," "female connector," and "male connector electrode" require construction. Plaintiff contends that the claim language shows that the remaining "connector" terms should be construed according to their plain and ordinary meaning. (Dkt. No. 46 at 6.) Plaintiff argues that the "connector" terms are ubiquitous in the Asserted Patents. (*Id.* at 7.) Plaintiff also argues that all of the asserted claims use "connector" in its plain and ordinary sense. (*Id.* at 8.) Plaintiff further contends that the claim language does not support Defendant's proposed limitations. (*Id.*)

Regarding Defendant's proposal to construe "female connector receptacle" to mean to mean "female terminal chamber," Plaintiff argues that the disputes concern the meanings of "connector" and "receptacle" because the parties agree that "female" should be given it plain and ordinary meaning. (*Id.* at 9.) Plaintiff argues that in this context, Defendant contends that "connector" should mean "terminal," but the claims show that "connector" and "terminal" have different meanings. (*Id.*) (citing '038 Patent at Claim 1). According to Plaintiff, the claim language indicates that the terms "connector" and "terminal" do not mean same thing, because a "connector" may have other elements as well, in this case an electrically insulated housing. (Dkt.

No. 46 at 9–10.) Plaintiff also argues that although the claims do not explicitly distinguish between "receptacle" and "chamber," construing "receptacle" to mean "chamber" would not clarify the plain meaning of "receptacle" and would tend to confuse the jury. (*Id.*)

Regarding Defendant's proposal to construe "female connector" to mean "female terminal," Plaintiff argues that claim 1 of the '038 Patent shows that "connector" and "terminal" have different meanings. (*Id.*) Plaintiff argues that dependent claim 7 further underscores this distinction, citing "an engaging recess configured to retain the first terminal within a female connector." (*Id.*) Plaintiff contends that although a connector comprises a terminal, the reverse is not necessarily true. (*Id.*)

Regarding Defendant's proposal to construe "male connector electrode" to mean "male terminal," Plaintiff argues that the claim language shows that "connector" does not mean "terminal." (*Id.*) Plaintiff also argues that Defendant's construction disregards the word "electrode" and, thus fails to give effect to all the terms in the claim. (*Id.*) Plaintiff contends that the word "electrode" appears elsewhere in the asserted claims, but neither party requested construction of this term. (*Id.*)

Plaintiff further contends that the term "connector" appears in multiple contexts within the claims. (*Id.* at 11) (citing '855 Patent at 16:41–60, 17:13–16, and 17:23–27). Plaintiff argues that "a claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent." (Dkt. No. 46 at 11) (citing *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001)). Plaintiff contends that under Defendant's construction, "connector" would have three different meanings. (Dkt. No. 46 at 11.) Plaintiff argues that these various and conflicting constructions for the same word would confuse the jury, especially because the term "connector" is readily understood. (*Id.*)

Plaintiff further argues that the patentees used the term "connector" in the multiple contexts discussed above without according any special meaning to the term. (*Id.* at 12.) Plaintiff contends that the patentees' varied use of the term "connector" supports construction of the term according to its plain and ordinary meaning. (*Id.* at 13.) Finally, Plaintiff argues that the prosecution history is replete with uses of the term "connector" in its plain and ordinary sense. (*Id.*)

Defendant responds that Plaintiff incorrectly argues that these terms should be construed throughout the claims based solely on the shared term "connector." (Dkt. No. 47 at 18.) Defendant contends that each of these claim terms includes more than the word "connector," and simple grammar rules necessitate that the adjectives "female" and "male" distinguish the terms "female connector" and "male connector electrode." (*Id.*) Defendant further contends that the Court should provide a construction for these claims to avoid confusion to the jury between these claim terms, which correspond to either a male member, a female member or parts thereof, and the "electrical connector" terms which include both "a female member and a male member." (*Id.*) Defendant further argues that the Court should construe the terms in accordance with their use in the respective claims and the specification to avoid confusing the jury. (*Id.* at 19.)

Plaintiff responds that Defendant does not defend its constructions of "male connector electrode," "female connector," and "female connector receptacle." (Dkt. No. 49 at 8.) Plaintiff further argues that it does not contend that the "female connector" and the "male connector electrode" are the same thing. Plaintiff contends that adding "female" and "male" to "connector" merely distinguishes between the myriad uses of "connector." (*Id.* at 9.) Plaintiff argues that its construction recognizes the differentiation between the remaining "connector" elements and gives effect to all terms in the claim. (*Id.*) Plaintiff contends that the use of different adjectives to

distinguish between different instances of the term "connector" does not mean that the Court should construe "male connector electrode," "female connector," and "female connector receptacle" to impose different meanings on the single word "connector." (*Id.*) According to Plaintiff, doing so would violate the fundamental principle that "a claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent." (*Id.*) (citing *Rexnord*, 274 F.3d at 1342). Plaintiff argues that the body of the claims define exactly what the remaining "connector" terms, *i.e.*, "male connector electrode," "female connector," and "female connector receptacle" mean. (*Id.*)

Plaintiff further argues that Defendant's constructions are themselves confusing. (*Id.* at 10.) Plaintiff contends that the claim language plainly specifies the structure of each claimed connector, and a lay juror will readily understand the difference in the "connector" terms on a plain reading of the claims. (*Id.*) Plaintiff argues that Defendant's construction creates confusion by giving different meanings to the term "connector," when the context itself clarifies whether the claimed connector is male, female, or both male and female. (*Id.*)

For the following reasons, the Court finds that the terms **"female connector receptacle," "female connector,"** and **"male connector electrode"** should be given their plain and ordinary meaning.

### b) Analysis

The term "female connector receptacle" appears in asserted claim 11 of the '855 Patent; and asserted claims 1, 5, 10, and 19 of the '038 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same general meaning in each claim. The term "female connector" appears in asserted claim 8 of the '855 Patent; and asserted claims 7 and 15 of the '038 Patent. The Court finds that the term is used consistently in the claims and is

intended to have the same general meaning in each claim. The term "male connector electrode" appears in asserted claims 1–3 of the '038 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same general meaning in each claim.

The Court further finds that these terms are unambiguous, are easily understandable by a jury, and should be given their plain and ordinary meaning. Specifically, the body of the claims define what the remaining "connector" terms mean (i.e., "male connector electrode" "female connector," and "female connector receptacle"). Defendant argues that the Court should construe these terms to avoid confusion with the "electrical connector" terms. (Dkt. No. 47 at 19.) As discussed above, the Court finds that the preamble is not limiting and that the term "electrical connector" does not require construction. An "electrical connector" may include a male connector, a female connector, or both a male and a female connector as indicated by the claim language.

Moreover, the Court is not persuaded that it should replace the language chosen by the patentees, with the language proposed by Defendant. Indeed, Defendant asks the Court to replace the words "connector receptacle" with "terminal chamber;" the word "connector" in the '855 Patent with "terminal;" the same word "connector" in the '038 Patent with "terminal chamber;" and the words "connector electrode" with "terminal." The Court is not convinced that Defendant's proposed substitution are necessary or would provide any clarity to the jury. In fact, they could confuse the jury because the term "connector" would have different meanings. Specifically, the Court finds the following regarding Defendant's proposed constructions.

Regarding Defendant's proposal to construe "female connector receptacle" to mean "female terminal chamber," the Court finds that the claims indicate that the terms "connector" and "terminal" may have different meanings. *See, e.g.,* '038 Patent at Claim 1. For example, a

"connector" may have other elements, such as the electrically insulated housing recited in claim 1 of the '038 Patent. The Court further finds that although the claims do not explicitly distinguish between "receptacle" and "chamber," construing "receptacle" to mean "chamber" would not clarify the plain meaning of "receptacle" and would tend to confuse the jury.

Regarding Defendant's proposal to construe "female connector" to mean "female terminal," the Court finds that claims 1 and 7 of the '038 Patent indicate that "connector" and "terminal" may have different meanings. For example, claim 7 recites "an engaging recess configured to retain the first *terminal* within a female *connector*." '038 Patent at Claim 7 (emphasis added). Thus, as this claim language indicates, the Court finds that although a connector may include a terminal, the reverse is not necessarily true.

Regarding Defendant's proposal to construe "male connector electrode" to mean "male terminal," the Court finds that the claim language indicates that "connector" does not mean "terminal." The Court also finds that Defendant's construction disregards the word "electrode," and thus fails to give effect to all the terms in the claim. The Court also notes that the word "electrode" appears elsewhere in the asserted claims, but neither party requested construction of this term.

The lack of clarity is further illustrated by Defendant's construction of "female connector" to mean "female terminal" in the '855 Patent and "female terminal chamber," in the '038 Patent. Defendant did not provide a convincing reason why the term "female connector" should be construed differently in this patent family. *Rexnord*, 274 F.3d at 1342 ("[A] claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent."). Thus, the Court finds that these various and conflicting proposed constructions for the same word could confuse the jury. Moreover, the Court finds that the terms

are unambiguous, are easily understandable by a jury, and should be given their plain and ordinary meaning.

### c) Court's Construction

In light of the evidence submitted by the parties, the terms **"female connector receptacle," "female connector,"** and **"male connector electrode"** will be given their plain and ordinary meaning.

### III.    CONCLUSION

The Court adopts the above constructions. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**It is SO ORDERED.**

**SIGNED this 27th day of August, 2015.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE